UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN WEBB,<br><br>Plaintiff,<br><br>v.<br><br>REJOICE DELIVERS LLC, et al.,<br><br>Defendants. | Case No.  22-cv-07221-BLF<br><br>**ORDER DENYING MOTION TO COMPEL INDIVIDUAL ARBITRATION, DISMISS CLASS CLAIMS, AND DISMISS OR STAY ACTION**<br><br>Re: ECF No. 36 |

Plaintiff Ian Webb ("Mr. Webb") brings this putative class action against Defendants Amazon Logistics, Inc. ("Amazon"), Amazon.com Services, LLC (together, the "Amazon Defendants"), and Rejoice Delivers LLC's ("Rejoice" or "RDL," and, with the Amazon Defendants, "Defendants"), alleging numerous violations of California's labor laws.  *See* First Am. Class Action Compl. ("FAC"), ECF No. 1-2.  Presently before the Court is Defendants' Motion to Compel Individual Arbitration, Dismiss Class Claims, and Dismiss or Stay Action (the "Motion").  *See* Mot., ECF No. 36; Joinder, ECF No. 37.[1]  Mr. Webb opposes the Motion.  *See* Opp'n, ECF No. 58.  The Court heard oral argument on September 7, 2023.  This action was temporarily stayed from September 7, 2023, through October 30, 2023.  *See* ECF Nos. 75, 82. Now, having considered the parties' written and oral arguments regarding Defendants' Motion, the Court DENIES the Motion for the following reasons.

## I.      BACKGROUND

### A.      Factual Background

Rejoice is a delivery service based in Union City, California.  Decl. of Kevin Hom ("Hom

---

[1] Although the Motion was filed by Rejoice and joined by the Amazon Defendants, the Court will refer to the Motion and supporting papers as though filed by Defendants jointly.

1  Decl.") ¶ 2, ECF No. 36-1.  Amazon is one of Rejoice's clients, and Rejoice participates in

2  Amazon's Delivery Service Partner ("DSP") program, pursuant to which it hires drivers to deliver

3  packages to Amazon customers who order products from Amazon's website.  *See id*.  Rejoice and

4  Amazon "maintained a contractual relationship" through the DSP program for the duration of Mr.

5  Webb's employment.  *Id.* ¶ 3.  Under the DSP program, delivery drivers pick up Amazon

6  packages at Amazon facilities in California and deliver the packages to customers locally.  *Id.* ¶ 2.

7  The drivers do not pick up or deliver packages outside California.  *See id.* ¶ 3.

8  It is not clear whether Amazon is Rejoice's only client.  When Rejoice intends to hire a

9  new employee, it creates a Rejoice company email and profile for that individual, which results in

10  the individual receiving an email from "The Amazon Logistics Team" with the subject line "Join

11  REJOICE DELIVERS LLC to deliver Amazon packages."  *See id.* ¶ 6.  The email instructs the

12  individual to "[s]ign in," and provides a link containing the domain name "logistics.amazon.com"

13  that, when clicked, opens a web page inviting the individual to select a "Create Account" button

14  "[t]o join REJOICE DELIVERS LLC."  *See* Hom Decl. ¶ 7.  The "Create Account" button leads

15  to a page to "create an Amazon account to join your delivery service provider."  *See id.* ¶ 8; *see*

16  *also* Decl. of Alexis Cantwell-Badyna ("Cantwell-Badyna Decl.") ¶ 4 ("For customer safety,

17  privacy, and other reasons, and before RDL has one of its employees deliver packages to an

18  Amazon customer's home or business, RDL identifies that RDL employee to Amazon during an

19  online registration process."), ECF No. 36-6.  After additional steps, the individual is instructed to

20  "download the Amazon Flex app" "[t]o start making deliveries with REJOICE DELIVERS LLC."

21  *See* Hom Decl. ¶ 10.  After the individual downloads and launches the Amazon Flex application

22  and signs in with his or her Rejoice email address, the individual passes through multiple pages to

23  access a document titled "Mutual Agreement to Individually Arbitrate Disputes" (the

24  "Agreement").  *See id.* ¶¶ 11–14; *id.* at Exh. 1 ("Agreement"), ECF No. 36-2; Cantwell-Badyna

25  Decl., Exh. 1 (same); *see also* Cantwell-Badyna Decl. ¶ 5 ("The online registration system

26  presents the full text of the [] Agreement to each RDL employee or prospective employee.").

27  According to Rejoice's owner, potential employees were required to review and accept the

28  Agreement.  *See* Hom Decl. ¶¶ 1, 5.

The Agreement provides that all claims related to an individual's employment—including claims for overtime, unpaid wages, expense reimbursement, wage statements, and claims involving meal and rest breaks—are subject to binding individual arbitration. *See* Agreement 1. It includes an express waiver of class, collective, consolidated, and representative action claims. *See id.* at 2. The Agreement also provides that it is governed by the FAA and federal common law, unless the FAA or federal common law are found not to apply, in which case it is governed by applicable state law. *See id.* at 3.

Mr. Webb executed the Agreement on November 23, 2020. *See id.* ¶ 4; *see also id.* at Exhs. 1–2, ECF Nos. 36-2, 36-3. Mr. Webb then began working as a delivery driver on or about December 6, 2020, in an hourly-paid, non-exempt position. *See id.* ¶ 3; Decl. of Ian Webb ("Webb Decl.") ¶ 2, ECF No. 58-4. A profile for Mr. Webb, "as visible from RDL's account" on a webpage showing a copyright by "Amazon.com, Inc. or its affiliates," shows his name and Rejoice company email, with a "service type" of "Amazon logistics." Hom Decl. ¶ 20; *id.* at Exh. 3. Mr. Webb declares that he spent "[a]lmost the entirety" of his employed time driving and making deliveries. Webb Decl. ¶ 2. He was required to wear a uniform with the Amazon logo displayed prominently, picked up Amazon packages from the Amazon delivery station, loaded them into the Amazon-branded delivery vehicle, and delivered the packages following the delivery route set by Amazon through the Amazon Flex smartphone app. *Id.* ¶ 7. Mr. Webb only picked up and delivered packages within California. *See* Hom Decl. ¶ 3. Mr. Webb's employment ended after about five weeks, on or about January 10, 2021. *See id.*; *see also* Decl. of Lawrence W. Beall ("Beall Decl.") ¶ 5, ECF No. 58-1.

### B.   Procedural History

On August 9, 2022, Mr. Webb filed this suit against Rejoice in California Superior Court, County of Santa Clara. *See* Compl., ECF No. 1-1. Mr. Webb then filed the operative First Amended Class Action Complaint ("FAC") against all three Defendants on October 14, 2022. *See* FAC. The FAC alleges violations of California Labor Code §§ 510 and 1198 (unpaid overtime); §§ 226.7 and 512(a) (unpaid meal period premiums); § 226.7 (unpaid rest period premiums); §§ 1194 and 1197 (unpaid minimum wages); §§ 201 and 202 (final wages not timely paid); § 226(a)

United States District Court
Northern District of California

1    (non-compliant wage statements); and §§ 2800 and 2802 (unreimbursed business expenses), all

2    under § 229 of the Labor Code, as well as violations of the unfair and unlawful prongs of

3    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  *See* FAC.  Mr.

4    Webb purports to bring this action on behalf of and represent "all persons who performed services

5    for Defendants Amazon Logistics, Inc. and/or Amazon.com Services, LLC and were paid by a

6    contracted delivery service provider within the State of California at any time during the period

7    from August 9, 2018 to final judgment."  FAC ¶¶ 14–15.

8             Rejoice answered the FAC in state court on November 16, 2022.  *See* Rejoice Answer,

9    ECF No. 1.-5.  That same day, the Amazon Defendants removed the case to federal court under

10   the Class Action Fairness Act, and specifically 28 U.S.C. §§ 1332, 1141, 1446, and 1453.  *See*

11   Not. of Removal 1–2, ECF No. 1.  On January 6, 2023, Rejoice filed a motion to compel

12   individual arbitration in which the Amazon Defendants joined, *see* ECF Nos. 21–22, and then

13   withdrew the motion on April 27, 2023, *see* ECF No. 32.  Rejoice then filed the instant Motion on

14   May 18, 2023, and the Amazon Defendants filed a joinder on May 26, 2023.  *See* Mot.; Joinder.

15   Mr. Webb filed an opposition on July 20, 2023, *see* Opp'n, and Rejoice filed a reply on August 17,

16   2023, *see* Reply, ECF No. 70.[2]  The Court heard oral argument on the Motion on September 7,

17   2023.  *See* ECF No. 73.  Pursuant to a colloquy at the hearing, the Court temporarily stayed the

18   case from September 7, 2023, until the filing of a petition for certiorari in a case relevant to one of

19   the main issues in this Motion, *Carmona v. Domino's Pizza LLC*, No. 21-55009 (9th Cir.), which

20   occurred on October 19, 2023.  *See* ECF Nos. 75, 82.  The Court declined to extend the stay until a

21   decision on the petition for certiorari, and lifted the stay on October 30, 2023.  *See* ECF No. 82.

22   **II.      REQUESTS FOR JUDICIAL NOTICE**

23            Both Defendants and Mr. Webb request judicial notice of certain documents.  *See* Defs.'

24   RJN, ECF No. 36-8; Pl.'s RJN, ECF No. 58-5; Defs.' Suppl. RJN, ECF No. 70-1.  A district court

25   may take judicial notice of materials under two doctrines:  (1) judicial notice under Federal Rule

26   of Evidence 201 and (2) incorporation by reference.  *Khoja v. Orexigen Therapeutics, Inc.*, 899

27

28   ───────────────
     [2] The Court struck all footnotes in the reply for failure to comply with its standing orders.  *See*
     ECF No. 71.

4

F.3d 988, 998 (9th Cir. 2018).  Under the judicial notice doctrine, a court may judicially notice a fact that is "not subject to reasonable dispute," *i.e.*, a fact that is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).  If a judicially noticeable document contains disputed facts, the court may notice the document, but not the disputed facts therein.  *Khoja*, 899 F.3d at 999 ("[A] court cannot take judicial notice of disputed facts contained in [judicially noticeable] public records.") (citation omitted).  The second doctrine, incorporation by reference, "is a judicially created doctrine that treats certain documents as though they are part of the complaint itself."  *Id.* at 1002. Under this doctrine, a court may consider a document "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."  *Khoja*, 899 F.3d at 1003 (internal quotations omitted).

### A.  Defendants' Request for Judicial Notice

Defendants request that the Court take judicial notice of (1) a December 16, 2022 decision of the Oklahoma Court of Civil Appeals in *Mathis v. Kerr*, No. 120,246 (Okla. Civ. App.), *see* Defs.' RJN 1, and (2) a tentative ruling in *Ovando v. Paolino Logistics*, No. CIVSB2216425 (Cal. Super. Ct., Cnty. Of San Bernardino), that the Superior Court adopted in full at a hearing on August 17, 2023, *see* Defs.' Suppl. RJN 1.  Mr. Webb does not object to the requests.  *See generally* Opp'n.  Courts regularly take notice of public court filings, and the Court will therefore grant Defendants' request to take judicial notice of the two submitted decisions.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746, n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); *Harris v. County of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts.") (internal citations omitted).

### B.  Mr. Webb's Request for Judicial Notice

Mr. Webb seeks judicial notice of five documents, consisting of two U.S. Department of Transportation forms (both accessible at a fmcsa.dot.gov domain); Rejoice's public record on the

1    Federal Motor Carrier Safety Administration system (also accessible at a fmcsa.dot.gov domain);

2    a June 1, 2023 decision of the Washington Superior Court in *Stelman v. Amazon.com Inc.*, No. 22-

3    2-15880-8 SEA (Wash. Super. Ct., Cnty. of King); and a declaration of Alexis Cantwell-Badyna

4    submitted in *Stelman v. Amazon.com Inc.*, No. 22-2-15880-8 SEA.  *See* Pl.'s RJN 1.  Defendants

5    make no objection to the requests.  *See generally* Reply.

6          All of the documents submitted by Mr. Webb are matters of public record, and the Court

7    will accordingly grant Mr. Webb's request to take judicial notice of each document.  *See Daniels-*

8    *Hall v. Nat'l Educ. Ass'n* , 629 F.3d 992, 998–99 (9th Cir. 2010) ("It is appropriate to take judicial

9    notice of this information, as it was made publicly available by government entities . . . and neither

10   party disputes the authenticity of the web sites or the accuracy of the information displayed

11   therein.") (citations omitted); *Harris*, 682 F.3d at 1132.

12         The Court will not take judicial notice of any disputed facts in the documents submitted by

13   the parties.

### III.   LEGAL STANDARDS

#### A.     Existence of Arbitration Agreement

16         "The threshold issue in deciding a motion to compel arbitration is 'whether the parties

17   agreed to arbitrate.'"  *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1133 (C.D. Cal. 2011)

18   (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988)).  "When

19   determining whether a valid contract to arbitrate exists, we apply ordinary state law principles that

20   govern contract formation."  *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014) (citing

21   *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002)).  The party

22   seeking to compel arbitration "bears the burden of proving the existence of an agreement to

23   arbitrate by a preponderance of the evidence."  *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th

24   Cir. 2023).

25         Should an arbitration agreement exist, there is a strong default presumption that the

26   Federal Arbitration Act applies to the agreement.  *See, e.g.*, *Sovak v. Chugai Pharm. Co.*, 280 F.3d

27   1266, 1269 (9th Cir. 2002) (citations omitted).

28

United States District Court
Northern District of California

### B.     Federal Arbitration Act

Under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1–16, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also In re Grice*, 974 F.3d 950, 953 (9th Cir. 2020) ("The [FAA] places arbitration agreements on equal footing with other contracts, requiring courts to enforce them according to their terms.") (citation omitted).  The FAA carries a presumption in favor of arbitrability.  *See Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1209 (9th Cir. 1998).

"Under § 4, in response to a motion to compel arbitration, the district court must 'hear the parties.'"  *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (quoting 9 U.S.C. § 4).  However, "to invoke its statutory powers under §§ 3 and 4 to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2."  *New Prime v. Oliveira*, 586 U.S. ----, 139 S. Ct. 532, 537 (2019).  Section 1 of the FAA exempts from the Act's purview "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  "[A] court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration."  *New Prime*, 139 S. Ct. at 537.

Courts evaluate motions to compel arbitration brought under the FAA using a summary judgment standard.  That is, a moving party must prove the existence of an agreement to arbitrate by a preponderance of the evidence, and all reasonable inferences are resolved in favor of the opposing party.  *See, e.g.*, *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 936 (N.D. Cal. 2019); *see also Hansen*, 1 F.4th at 670 ("The summary judgment standard is appropriate because the district court's order compelling arbitration 'is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate.'") (citation omitted).  However, a plaintiff who asserts the applicability of the FAA § 1 exemption "has the burden of proving the exemption applies."  *Romero v. Watkins & Shepard Trucking, Inc.*, No. EDCV 19-2158, 2020 WL 5775180, at *6 (C.D. Cal. July 10, 2020) (citation omitted), *aff'd*, 9 F.4th 1097 (9th Cir. 2021).

1    "When a contract with an arbitration provision falls beyond the reach of the FAA, courts

2    look to state law to decide whether arbitration should be compelled nonetheless." *Breazeale v.*

3    *Victim Servs., Inc.*, 198 F. Supp. 3d 1070, 1079 (N.D. Cal. 2016) (citation omitted), *aff'd*, 878 F.3d

4    759 (9th Cir. 2017).

5        **C.    California Arbitration Act**

6        "California law strongly favors arbitration." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125

7    (2015).  The California Arbitration Act (the "CAA") provides that arbitration agreements are

8    "valid, enforceable, and irrevocable, save upon such grounds as exist for the revocation of any

9    contract."  Cal. Code Civ. P. § 1281.  Unlike the FAA, the CAA—as a state statute—"obviously

10   does not prevent [California's] Legislature from selectively prohibiting arbitration in certain

11   areas." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98 (2000).[3]

12       Further, as relevant to this action, California courts "will not enforce provisions contained

13   within arbitration agreements that pose significant obstacles to the vindication of employees'

14   statutory rights." *Garrido v. Air Liquide Indus. U.S. LP*, 24 Cal. App. 4th 833, 844 (2015)

15   (citation omitted).  Such provisions may include class arbitration waivers.  *See Gentry v. Super.*

16   *Ct.*, 42 Cal. 4th 442, 457 (2007).[4]  Under *Gentry*, a class arbitration waiver is unenforceable if—

17   after considering (1) "the modest size of the potential individual recovery"; (2) "the potential for

18   retaliation against members of the class"; (3) "the fact that absent members of the class may be ill

19   informed about their rights"; and (4) "and other real world obstacles to the vindication of class

20   members' right[s]"—the court finds that class waiver "will likely lead to a less comprehensive

21   enforcement of overtime laws" and that class proceedings would be "a significantly more effective

22   ────────────────────

23   [3] For example, one of the statutes Defendants allegedly violated is Labor Code § 229, which
     provides that "[a]ctions to enforce the provisions of this article for the collection of due and unpaid

24   wages claimed by an individual may be maintained without regard to the existence of any private
     agreement to arbitrate."  Cal. Labor Code § 229; *see Performance Team Freight Sys., Inc. v.*

25   *Aleman*, 241 Cal. App. 4th 1233, 1239 (2015) ("Labor Code section 229 provides an exception
     under California law to th[e] general rule favoring arbitrability."); Mot. 2 n.1; FAC ¶¶ 99–129.

26   [4] Although California courts have recognized both Labor Code § 229 and *Gentry* to be preempted

27   by the FAA, they have also held that an action under Labor Code § 229 may be maintained when
     only the CAA applies, and noted that "*Gentry*'s holding has not been overturned under California

28   law in situations where the FAA does not apply."  *See Garrido*, 24 Cal. App. 4th at 838, 844–45
     (citations omitted).

United States District Court
Northern District of California

1    practical means of vindicating the rights of the affected employees."  42 Cal. 4th at 463.  "The

2    plaintiff is required to make 'a factual showing under the four-factor test.'"  *Mejia v. RXO Last*

3    *Mile, Inc.*, No. 22-cv-08976, 2023 WL 5184153, at *4 (N.D. Cal. Aug. 10, 2023) (quoting *Brown*

4    *v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 497, *as modified* (Cal. Ct. App. July 20, 2011)).

5    "The court has broad discretion in ruling on this issue."  *Muro v. Cornerstone Staffing Sols., Inc.*,

6    20 Cal. App. 5th 784, 793 (2018).

7          As with motions to compel arbitration under the FAA, courts evaluate motions to compel

8    arbitration brought under the CAA using a summary judgment standard.  *See, e.g.*, *Lane v. Francis*

9    *Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 683 (2014) ("The trial court may resolve motions to

10   compel arbitration in summary proceedings, in which '[t]he petitioner bears the burden of proving

11   the existence of a valid arbitration agreement by the preponderance of the evidence, and a party

12   opposing the petition bears the burden of proving by a preponderance of the evidence any fact

13   necessary to its defense.'") (quoting *Engalla v. Permanente Med. Grp., Inc.* 15 Cal. 4th 951, 972

14   (1997).

15   **IV.    DISCUSSION**

16         Defendants argue that the Agreement is enforceable and covers all of Mr. Webb's claims,

17   so that the Court should compel individual arbitration and either dismiss the action—or at least

18   Mr. Webb's class claims—or stay the action pending completion of the individual arbitration.  *See*

19   Mot. 2–12.  Mr. Webb responds that the FAA § 1 exemption applies, so that the CAA governs the

20   Agreement, and that the Agreement's class waiver provision should be invalidated under *Gentry*.

21   *See* Opp'n 5–14.  Defendants counter both of these arguments on reply.  *See* Reply 1–6.

22         The Court first briefly discusses the existence of an arbitration agreement before turning to

23   the question of whether it can compel arbitration under either the FAA or the CAA.

24         **A.      Whether an Arbitration Agreement Exists**

25         Defendants carry the threshold burden of "proving the existence of an agreement to

26   arbitrate by a preponderance of the evidence."  *Johnson*, 57 F.4th at 681.  Here, Defendants have

27   submitted evidence that Mr. Webb signed the Agreement on November 23, 2020, and that the

28   Agreement provides for individual arbitration of claims such as those brought here by Mr. Webb.

United States District Court
Northern District of California

*See* Hom Decl. ¶ 4; Agreement 1; *see also* Hom Decl., Exhs. 2–3.  The Court notes that although Mr. Webb is unquestionably a party to the Agreement, the identity of the countersigning party is less clear, as the Agreement uses but does not define the term "Company."  *See generally* Agreement.  Defendants assert that Rejoice is the counterparty to the Agreement, *see, e.g.*, Mot. 1, and there exists evidence that Rejoice employed Mr. Webb, *see, e.g.*, Hom Decl. ¶¶ 4, 6, but the evidence before the Court also indicates that Mr. Webb accessed the Agreement via the Amazon Flex application after receiving an email with onboarding instructions from "The Amazon Logistics Team," *see id.* ¶¶ 6, 10–14.  However, Mr. Webb does not challenge the existence of the Agreement, *see generally* Opp'n, and the Court is satisfied that Defendants have shown by a preponderance of the evidence the existence of Mr. Webb's agreement to arbitrate his claims with one or more of the Defendants.

> **B.  Whether the FAA Compels Arbitration**

Because the Agreement exists, "there is a strong default presumption that the Federal Arbitration Act applies," *Sovak*, 280 F.3d at 1269, and the Agreement itself states that it is governed by the FAA, *see* Agreement 3.  Mr. Webb argues that the FAA does not apply to the Agreement—and Defendants cannot compel arbitration pursuant to the FAA—because the Agreement falls under the FAA's exemption for "contracts of employment of . . . any . . . class of workers engaged in foreign or interstate commerce."  *See* Opp'n 5–11; 9 U.S.C. § 1.  The parties dispute whether (1) the Agreement is a "contract[] of employment" and (2) Mr. Webb and the putative class are part of a "class of workers engaged in foreign or interstate commerce."  *See* Mot. 3–7; Opp'n 5–11; Reply 1–5.  Mr. Webb carries the burden of proving the exemption applies.  *See Romero*, 2020 WL 5775180, at *6.  The Court addresses in turn these two disputed facets of the exemption.

> **1.  Contract of Employment**

Mr. Webb argues that the Agreement, although "physically contained on a separate page from other agreements/documents in his onboarding process," was a contract of employment because the Agreement was a mandatory condition of employment.  Opp'n 6.  He further notes that the Agreement by its own terms concerns a "work environment" and "[d]isputes related to

work." *See id.* (quoting Agreement 1).  Defendants counter that the Agreement was not a contract of employment, but rather an independent arbitration agreement, on the grounds that it was a "separate, standalone document not contained within any broader employment agreement," Mot. 4 (internal quotations omitted), and that the Agreement covers pre-employment claims relating to an employee's application, *see* Reply 1–3.

As an initial matter, the Court finds spurious the argument that the Agreement was not a contract of employment because it was not embedded within another document, such as a job offer, that outlined other terms of Mr. Webb's employment.  *See* Mot. 3–4; Reply 1–2.  Mr. Webb, like other potential delivery drivers, was instructed to "finish setting up [his] account" in the Amazon Flex app in order "[t]o start making deliveries with REJOICE DELIVERS LLC."  Hom Decl. ¶ 10.  To finish setting up an account on the Amazon Flex app, Mr. Webb had to "complete the tasks on the following pages," *see id.* ¶ 12, which included, among other things, signing the Agreement, *see id.* ¶¶ 13, 15.  These facts indicate that—as Defendants acknowledge—signing the Agreement was part of the "onboarding" process for delivery drivers.  *See id.* ¶ 5.  Further, the Agreement itself begins by defining the signatory as the "Employee" and referring to "[d]isputes related to work," and ends with a section titled "Employee Acknowledgment" in which the signatory "further agree[s] and acknowledge[s] that [] acceptance of or continuing employment with the Company provides further evidence of my agreement to accept and be bound by the terms of this Agreement."  Agreement 1, 3.

Given these circumstances, to find that the Agreement—a document regarding "[d]isputes related to work," *see id.* at 1, that individuals were required to sign in order to begin employment and "start making deliveries," *see* Hom Decl. ¶ 10—is not a contract of employment because it was not contained within another document containing a broader employment agreement would render FAA § 1 nearly meaningless and incentivize gamesmanship, as employers could avoid the exemption by always placing arbitration agreements in separate documents when onboarding new employees.  *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113 (2001) ("This line of reasoning proves too much, for it would make the § 1 exclusion provision superfluous.");  *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 907–08, 919 (9th Cir. 2020) (finding FAA § 1

exemption applied to arbitration agreement presented via Amazon Flex app as separate document with execution required prior to beginning delivery work); *Abram v. C.R. England, Inc.*, No. CV-20-00764, 2020 WL 5077365, at *4 (C.D. Cal. Apr. 15, 2020) (rejecting argument that standalone arbitration agreement signed prior to hiring with other onboarding documents was not contract of employment because "the Court must also not interpret [FAA § 1] in a manner that completely eviscerates its purpose"); *cf. Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 121 (2d Cir. 2010) (finding arbitration agreement was not a contract of employment where agreement signed after start of employment and following work-related injury).

Defendants also argue that the Agreement is not a contract of employment because it purports to cover disputes relating not only to Mr. Webb's "hiring, hours worked, services provided, and/or employment with the Company or the termination thereof," but also to "Employee's application," such that the Agreement could cover a pre-employment event. *See* Reply 2–3; Agreement 1. Defendants provide no legal support for this position, and instead assert only that three cases cited by Mr. Webb—in his response to Defendants' opening argument that the Agreement is not a contract of employment because it is a standalone document—do not "involve[] . . . agreement[s] that cover[] pre-employment claims," or at least concern agreements that "do[] not expressly encompass pre-employment claims." Reply 2–3. The Court can find no principled reason to distinguish the coverage of potential pre-employment claims between an arbitration agreement that covers "all claims or disputes, whether or not arising out of the Employee's employment by the Company," *see Abram*, No. CV-20-00764, ECF No. 18-3 (C.D. Cal. Mar. 2, 2020) (held subject to FAA § 1 exemption by *Abrams*, 2020 WL 5077365, at *4), and an agreement that covers "all . . . claims . . . relating to . . . Employee's application, hiring, hours worked, services provided, and/or employment," Agreement 1. It further appears that courts routinely accept that an arbitration agreement covering disputes arising out of an employment application may be considered a contract of employment, and this Court will do the same. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 108, 112, 119 (2001) (accepting arbitration provision "relating to [employee's] application or candidacy for employment, employment and/or cessation of employment" as contract of employment, though holding exemption inapplicable to

non-transportation workers); *see also, e.g.*, *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1085, 1101 (C.D. Cal. 2015) (finding arbitration agreement "relating to [employee's] application or candidacy for employment, employment, and/or cessation of employment" an employment contract under the FAA); *Sheppard v. Staffmark Inv., LLC*, No. 20-cv-05443, 2021 WL 690260, at *2–4 (N.D. Cal. Feb. 23, 2021) (accepting arbitration agreement covering claims "arising out of Employee's application or candidacy for employment, employment, or cessation of employment" as contract of employment, but finding plaintiff was not a transportation worker eligible for FAA § 1 exemption); *Muhammad v. Battle-Tested Strategies, LLC*, No. 21-cv-07225, 2021 WL 6298348, at *1–3 (C.D. Cal. Dec. 2, 2021) (finding plaintiff, though not proposed class, eligible for FAA § 1 exemption where arbitration agreement covered claims "arising out of or relating to [Plaintiff's] application, hiring, hours worked, services provided, and/or employment with [BTS] or the termination thereof") (alterations in original).

Accordingly, the Court finds that the Agreement is a contract of employment for purposes of FAA § 1.

### 2.    Class of Workers Engaged in Foreign or Interstate Commerce

Mr. Webb argues that controlling Ninth Circuit case law provides that local delivery drivers who transport goods that have been moved through interstate commerce are members of a class of workers engaged in interstate commerce and are exempt under FAA § 1.  *See* Opp'n 7–11.  Defendants counter that Mr. Webb, as a delivery driver who made strictly local deliveries solely in California, is not exempt from the FAA under § 1.  *See* Mot. 4–7; Reply 3–5.  In determining whether Mr. Webb falls within a "class of workers engaged in foreign or interstate commerce," the Court "begin[s] by defining the relevant 'class of workers' to which [Mr. Webb] belongs," before "determin[ing] whether that class of workers is 'engaged in foreign or interstate commerce.'"  *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 455 (2022).  The Court turns to these two requirements in turn.

### a.    Class of Workers

Mr. Webb argues that he is part of a class of workers of "Amazon's last-mile delivery

United States District Court
Northern District of California

drivers" who, like the class of workers in *Rittman*, "pick up packages that have been distributed to Amazon warehouses . . . and transport them for the last leg of the shipment to their destination." *See* Opp'n 8.  Defendants assert that Mr. Webb "belongs to a class of local delivery drivers . . . who make strictly local deliveries solely in California."  Mot. 5.

A plaintiff is "a member of a 'class of workers' based on what [he] does . . ., not what [his employer] does generally."  *Saxon*, 596 U.S. at 456.  The parties do not appear to dispute the facts of what Mr. Webb actually did during his employment: after Amazon packages were unloaded from shipping trucks to Amazon facilities in California, Mr. Webb picked up those packages from the local Amazon facility, loaded them into a delivery vehicle, and delivered the packages, all within California.  *See* Webb Decl. ¶ 7; Hom Decl. ¶¶ 2–3.  As in *Rittman*, there is "no suggestion that the goods Am[azon] Flex workers deliver originate in the same state where deliveries take place, such that delivery providers are making purely intrastate deliveries."  *Rittman*, 971 F.3d at 915; *see also* Cantwell-Badyna Decl. ¶ 3 ("Amazon contracts with [Rejoice] to provide local delivery services.").  Based on these facts, the Court finds that Mr. Webb belongs to a class of workers who go to local Amazon facilities, physically load packages left at those facilities onto delivery vehicles, and then deliver those packages locally.  *See Rittman*, 971 F.3d at 915 ("AmFlex delivery providers are a class of workers that transport packages through to the conclusion of their journeys in interstate and foreign commerce.").

### b.  Engaged in Foreign or Interstate Commerce

Mr. Webb argues that his duties consisted of "handl[ing] goods traveling in interstate and foreign commerce," and that this is sufficient to fall within the FAA § 1 exemption.  *See* Opp'n 9 (quoting *Saxon*, 596 U.S. at 463).  Defendants argue that Mr. Webb and any class of workers to which he belongs cannot be engaged in foreign or interstate commerce because his work consisted of picking up and dropping off packages locally, so that he was not "directly involved in transporting goods across state or international borders."  Mot. 5 (quoting *Saxon*, 596 U.S. at 457).

Over the past three years, Supreme Court and Ninth Circuit decisions have developed the law pertaining to whether local delivery drivers responsible for the last leg of interstate goods are engaged in interstate commerce.  First, the Ninth Circuit held in 2020 that individuals who

contracted with Amazon to provide delivery services via Amazon Flex belonged to a class of workers engaged in interstate commerce, even if they did not cross state lines to make their deliveries. *Rittman*, 971 F.3d at 907, 915, 919.  The court reasoned that such delivery drivers "pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination," so that "[a]lthough Amazon contend[ed] that AmFlex delivery providers are 'engaged in local, intrastate activities,' the Amazon packages they carry are goods that remain in the stream of interstate commerce until they are delivered." *Id.* at 915.

Then, in 2022, the Supreme Court held that an airline ramp supervisor who frequently loaded and unloaded baggage on and off planes traveling across state lines was exempt under FAA § 1.  *Saxon*, 596 U.S. at 463.  In so holding, the Supreme Court rejected the airline's position that "only workers who physically move goods or people across foreign or international boundaries— pilots, ship crews, locomotive engineers, and the like—are 'engaged in foreign or interstate commerce.'" *Id.* at 461.  Rather, the Supreme Court clarified that "transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce" to qualify for the FAA § 1 exemption.  *Id.* at 458.

Most recently, in July 2023—after Mr. Webb filed his opposition, though before Defendants filed their reply—the Ninth Circuit reaffirmed its pre-*Saxon* holding that Domino's employees who deliver pizza ingredients to Domino's franchisees are also exempt under FAA § 1. *Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135, 1136 (9th Cir. 2023).  The court noted that its initial decision had "squarely rested" upon *Rittman*, and, after evaluating *Rittman* and finding it not inconsistent with *Saxon*, held that *Rittman* "continue[d] to control [the] analysis." *Id.* at 1137– 39.  The court instructed that the "critical question" in assessing whether workers are engaged in interstate commerce "is whether the workers are actively 'engaged in transportation' of goods in interstate commerce and play a 'direct and necessary role in the free flow of goods across borders.'" *Id.* at 1137 (quoting *Saxon*, 596 U.S. at 458).

Defendants concede that, following *Carmona*, *Rittman* is unquestionably binding upon the Court.  *See* Reply 3.  And this case is nearly identical to *Rittman*—in both cases, the plaintiffs

15

signed up for Amazon Flex to pick up packages from local Amazon facilities and deliver those packages locally. *See Rittman*, 971 F.3d at 915. The evidence submitted by Defendants indicates that Amazon contracts with Rejoice "to provide local delivery services," Cantwell-Badyna Decl. ¶ 3, and the goods picked up by Mr. Webb had been ordered from Amazon's website and brought to the local facilities by shipping trucks, *see* Hom Decl. ¶ 2. Thus, because Mr. Webb and the class of workers to which he belonged "pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of the shipment to their destination," his work was "a part of a continuous interstate transportation" of goods, so that he was engaged in interstate commerce for the purposes of the FAA § 1 exemption. *Rittman*, 871 F.3d at 915–16; *see also Carmona*, 73 F.4th at 1137; *Mejia*, 2023 WL 5184153, at *2–3 (finding FAA § 1 exemption applied to arbitration agreement signed by "last mile" delivery drivers who picked up merchandise at California warehouses and delivered to California customers).

Defendants argue that the Court should not consider Amazon at all in assessing whether Mr. Webb belonged to a class engaged in interstate commerce because Mr. Webb was employed by Rejoice, not Amazon. *See* Reply 3–4. Defendants further argue that *Carmona* supports examining "the 'nature of the business for which a class of workers performed their activities,'" and that the Court therefore "must look to [Rejoice], which provides purely local, in-state delivery services." *Id.* at 3 (quoting *Carmona*, 73 F.4th at 1138). As an initial matter, it is not settled that Mr. Webb was employed by Rejoice—he declares that he was employed by all Defendants, *see* Webb Decl. ¶ 2, and his onboarding process was arguably conducted by Amazon on the Amazon Flex app, *see* Hom Decl. ¶¶ 6–19. Although Mr. Webb has the burden of proving the FAA § 1 exemption applies, *see Romero*, 2020 WL 5775180, at *6, all reasonable inferences are resolved in favor of the party opposing a motion to compel arbitration, *see Hansen*, 1 F.4th at 670. The Court finds that Mr. Webb has submitted sufficient evidence to resolve the employment inference in his favor for the purposes of this Motion. But even if the Court did not so find, the nature of what Mr. Webb actually did for Rejoice—make last mile deliveries of Amazon goods, *see* Cantwell-Badyna Decl. ¶ 3, so that Amazon customers actually received the goods they ordered—puts him in a class of workers engaged in interstate commerce. *See Carmona*, 73 F.4th at 1137 ("[T]he critical

16

1   question is whether the workers are actively 'engaged in transportation' of goods in interstate

2   commerce and play a 'direct and necessary role in the free flow of goods across borders.'")

3   (quoting *Saxon*, 596 U.S. at 458).

4          Accordingly, the Court finds that Mr. Webb belonged to a class of workers engaged in

5   interstate commerce, so that the Agreement falls within the FAA § 1 exemption and enforcement

6   cannot be compelled under the FAA.  And because the Court concludes that the exemption

7   applies, it does not address Defendants' subsequent arguments that arbitration must be compelled

8   under the FAA's rules.  *See* Mot. 2–3, 7–8, 11–12.

9          **C.      Whether the CAA Compels Arbitration**

10          "When a contract with an arbitration provision falls beyond the reach of the FAA, courts

11  look to state law to decide whether arbitration should be compelled nonetheless." *Breazeale*, 198

12  F. Supp. 3d at 1079; *see also Mejia*, 2023 WL 5184153, at *4 ("Although the FAA does not apply,

13  the Court must still determine if arbitration is required by state law.") (citation omitted).  The

14  parties here agree that California law applies.  *See, e.g.*, Mot. 8; Opp'n 11.

15          The Agreement contains a provision waiving "class, collective, consolidated, and

16  representative action claims."  Agreement 2 (capitalizations omitted).  Mr. Webb argues that this

17  class waiver provision is invalid under California law because it "violates California public policy

18  favoring workers' rights and the vindication of those rights through collective action," Opp'n  1,

19  including by "diminish[ing] the prospect that California labor laws will be enforced," Opp'n 14

20  (internal quotations and citation omitted).  Under the Agreement, the Court is responsible for

21  determining the validity of the Agreement and the class waiver provision.  *See* Agreement 2 ("[A]

22  court of law must resolve any dispute concerning the validity and enforceability of the Agreement,

23  and the validity, enforceability or interpretation of the provisions pertaining to class, collective,

24  and representative action waivers.").  The Agreement further provides that a "representative action

25  will be heard in court, not arbitration," to the extent the class waiver is found unenforceable.  *Id.*

26          Under California law, class arbitration waivers are unenforceable if they "pose significant

27  obstacles to the vindication of employees' statutory rights," including the right to enforce labor

28

United States District Court
Northern District of California

laws protecting overtime.  *Garrido v. Air Liquide Indus. U.S. LP*, 24 Cal. App. 4th at 844.[5]  Under

*Gentry v. Superior Court*, a court must consider four factors in determining whether a class

arbitration waiver is unenforceable:  "the modest size of the potential individual recovery, the

potential for retaliation against members of the class, the fact that absent members of the class

may be ill informed about their rights, and other real world obstacles to the vindication of class

members' right to overtime pay through individual arbitration."  42 Cal. 4th at 463.  If the court

then finds that class waiver "will likely lead to a less comprehensive enforcement of overtime

laws" and that class proceedings would be "a significantly more effective practical means of

vindicating the rights of the affected employees," it must invalidate the waiver.  *Id.*

The Court addresses each of the four factors in turn.

### 1.    The Modest Size of the Potential Individual Recovery

Mr. Webb argues that his potential individual recovery, calculated at $6,274.38, is lower

than others that California courts have considered modest.  *See* Opp'n 12 (citing *Bell v. Farmers

Ins. Exchange*, 115 Cal. App. 4th 715, 745–46 (2004) (finding potential $37,000 recovery

modest); *Muro*, 20 Cal. App. 5th at 793 (finding potential $26,000 recovery modest)).  Defendants

argue that Mr. Webb's calculation includes "potential statutory damages for meal and rest periods,

waiting time penalties, and inaccurate wage statements," but excludes business-related expenses,

liquidated damages, pre-judgment interest, and attorney fees.  *See* Reply 5.

The Court finds that Mr. Webb has shown his potential individual recovery to be modestly

sized.  "First, individual awards in wage-and-hour cases tend to be modest" because "litigation

over minimum wage by definition involves the lowest-wage workers," and "overtime litigation

also usually involves workers at the lower end of the pay scale, since professional, executive, and

administrative employees are generally exempt from overtime statutes and regulations."  *Gentry*,

42 Cal. 4th at 457–58.  Second, the Court is not persuaded by Defendants' unsupported assertion

that adding in business-related expenses, liquidated damages, pre-judgment interest, and attorney's

---

[5] As noted above, *see supra*, at n.4, California state laws on unenforceability of arbitration
provisions are not precluded by the FAA where the FAA does not apply to the agreement at issue.
*See also, e.g.*, *Mejia*, 2023 WL 5184153, at \*5 n.2.

fees "could put the potential recovery far beyond 'modest.'"  Reply 5.  In their Notice of Removal, the Amazon Defendants estimated a maximum amount in controversy of $12,012,500, and "at least 7,000 putative class members."  Not. of Removal ¶¶ 17, 38.  Using these numbers, the average potential recovery of each class member would be about $1,716; and even using a more conservative estimate of 1,000 class members, the average potential recovery would be about $12,013.  Either estimate is well below potential individual recoveries found modest under *Gentry*. *See Mejia*, 2023 WL 5184153, at *5 (noting damages of $37,000, $16,376, and $36,512 to have been found modest, and finding modest potential damages of approximately $22,332).

Accordingly, the Court finds Mr. Webb has met the first factor of the *Gentry* test.

### 2.    The Potential for Retaliation Against Members of the Class

*Gentry* recognized that "retaining one's employment while bringing formal legal action against one's employer is not 'a viable option for many employees,'" and that the potential for such retaliation supports invalidation of a class waiver.  42 Cal. 4th at 459–60 (citation omitted). Mr. Webb attested that he "did not feel comfortable initiating the instant action while still employed by Defendants because [he] felt like [he] was treated unfairly and did not want to be viewed as a trouble starter," and that he "was afraid [he] would be retaliated against for initiating this lawsuit while still employed by Defendants."  Webb Decl. ¶ 6.  He argues that this declaration is sufficient to satisfy the second *Gentry* factor.  Defendants counter that *Gentry* did not recognize a risk of retaliation for former employees like Mr. Webb, who did not bring this suit until after the termination of his employment; that Mr. Webb has failed to provide evidence of potential retaliation; and that Rejoice's employee handbook expressly prohibited retaliation against employees for exercising their legal rights.  *See* Reply 5-6; Hom Decl., Exh. 4 ("Handbook"), ECF No. 36-5.

The question under *Gentry* is not whether Mr. Webb himself would face retaliation, but rather whether members of the putative class who remain employed by potentially affected employers—*i.e.*, members who continue to perform services for Amazon while being paid by a contracted delivery service provider—might face retaliation for bringing individual actions based on claims that would be covered by a class action.  *See Gentry*, 42 Cal. 4th at 459–60.  Rejoice's

19

1

employee handbook may have stated an express prohibition of retaliation, but Mr. Webb

2

nonetheless "was afraid [he] would be retaliated against for initiating this lawsuit while still

3

employed by Defendants."  Webb Decl. ¶ 6.  Courts have found similar declarations sufficient to

4

meet the second *Gentry* factor, *see, e.g.*, *Muro*, 20 Cal. App. 5th at 794, and this Court likewise

5

finds that Mr. Webb has met the second factor.

6

### 3.    Individual Class Members May Be Ill-Informed About Their Rights

7

The California Supreme Court observed in *Gentry* that "some individual employees may

8

not sue because they are unaware that their legal rights have been violated," and that "it may often

9

be the case that the illegal employer conduct escapes the attention of employees."  42 Cal. 4th at

10

461.  Mr. Webb attests that he was not aware of all of his rights as an employee, including that he

11

was entitled to regular meal and rest breaks to be taken within certain time periods, and that he

12

was entitled to penalties if his employer failed to pay all wages owed at the termination of his

13

employment.  *See* Webb Decl. ¶ 3.  Instead, Mr. Webb faced "enormous pressure to finish all [his]

14

deliveries within [an] eight[-]hour shift," was under "strict quotas . . . that were impossible to

15

complete without skipping [his] breaks," and received calls and texts from his supervisor

16

whenever he did take a break, in which the supervisor asked why he had stopped and told him to

17

keep making deliveries.  *Id.*  Further, Mr. Webb's supervisor "discouraged him from taking

18

overtime," and he "was not allowed to work overtime without advance permission."  *Id.*; *see also*

19

Handbook 12 ("Please remember you are not permitted to work overtime unless it has been

20

authorized in advance by your supervisor.  Working overtime without your supervisor's approval

21

may result in discipline, up to and including termination.").  Defendants respond that the employee

22

handbook explained employees' rights to meal and rest breaks, and that Mr. Webb has failed to

23

provide sufficient evidence that Rejoice employees were ill-informed of their rights.  *See* Reply 5–

24

6.

25

The Court finds Mr. Webb's declaration attesting to the pressure he faced to meet "strict

26

quotas" of deliveries without working overtime, unsurprisingly resulting in his skipping breaks, all

27

while being unaware of his rights as an employee, to be sufficient to meet the third *Gentry* factor

28

suggesting that class members may be ill-informed of their rights.  *See Garrido*, 24 Cal. App. 4th

United States District Court
Northern District of California

at 844 (finding third *Gentry* factor met where employee declared he was "unaware of his rights," his employer "made no effort to inform him or other truck drivers of such rights," and employee "was unable to take meal breaks because [he was] assigned tight delivery schedules, leading him to believe that he was not entitled to breaks").  Although the employee handbook may inform employees of their legal rights, the immediate pressure placed on Mr. Webb by his supervisor to, in essence, forgo those rights, suggests to the Court that Mr. Webb and likely other class-members are misinformed of their rights.  *See Mejia*, 2023 WL 5184153, at *7.

### 4.   Other Real-World Obstacles to the Vindication of Rights

With respect to the fourth factor, Mr. Webb argues generally that individual resolution of wage and hour claims is ineffective, relying on the uncited conclusions of other courts in separate cases that have analyzed this factor.  *See* Opp'n 14.  Mr. Webb makes "no particularized showing as to other real-world obstacles," and his argument "amounts to a general conclusion that class action waivers inhibit claims."  *Mejia*, 2023 WL 5184153, at *7.  The Court finds Mr. Webb has not made a factual showing on this factor, so that it weighs in Defendants' favor.

### 5.   Conclusion Regarding *Gentry* Factors

Mr. Webb has made a strong showing as to the first, second, and third *Gentry* factors, and did not make a showing on the fourth factor.  Based on the totality of the evidence before the Court, the Court concludes that the Agreement's class action waiver "will likely lead to a less comprehensive enforcement of overtime laws," and that class proceedings would be "a significantly more effective practical means of vindicating the rights of the affected employees." *Gentry*, 42 Cal. 4th at 463.  Accordingly, the class action waiver is invalid under California law as to all claims brought by Mr. Webb, *see id.*, so that, according to the terms of the Agreement, this action will be heard in a court of law, rather than arbitration.

Because the Court finds that the class arbitration waiver is invalid, it need not and does not address Defendants' remaining arguments.  *See* Mot. 8–12.

## V.   ORDER

Based on the foregoing, the Court hereby ORDERS as follows:

    1.  Defendants' motion to compel individual arbitration is DENIED on the grounds

United States District Court
Northern District of California

that the FAA § 1 exemption applies to the Agreement, and the Agreement's class action waiver is invalid under California law;

2.  Defendants' motion to dismiss Mr. Webb's class claims is DENIED;

3.  Defendants' motion to stay this action pending completion of individual arbitration is DENIED.

**IT IS SO ORDERED.**

Dated: December 5, 2023

_____
Beth Labson Freeman
United States District Judge